## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PARTNER ONE ACQUISITIONS INC., a Quebec, Canada corporation, and ASSIMA USA LLC, a Delaware limited liability corporation<br><br>Plaintiffs,<br><br>v.<br><br>WHATFIX PRIVATE LIMITED, an India corporation, and WHATFIX, INC., a Delaware corporation<br><br>Defendants. | C.A. No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Partner One Acquisitions Inc ("Partner One") and Assima USA LLC ("Assima") file this Complaint against Defendants WhatFix Private Limited and WhatFix, Inc., (collectively "WhatFix") as follows:

## NATURE OF ACTION

1.      This is an action for patent infringement based on the Patent Laws of the United States, 35 U.S.C. § 1, et seq.

2.      WhatFix infringes Partner One's U.S. Patent Nos. 8,087,007 ("'007 Patent") and 9,285,948 ("'948 Patent") (collectively, "The Asserted Patents"). This action arises out of WhatFix's making, using, selling, offering to sell, and/or importing into the United States and in this District products and services covered by one or more claims of The Asserted Patents.

## PARTIES

3.      Partner One and Assima are corporations organized and existing under the laws of Canada. Partner One's principal place of business is in Laval, Quebec, Canada at 6900 Bd

Arthur-Sauve, Suite 204, Laval, QC H7R 3X9, Canada. Assima's principal place of business in Riverside, California at 871 Marlborough Ave, Suite 100, Riverside, CA 92507. Partner One acquired Assima in 2019.

4.     WhatFix Private Limited is an Indian corporation existing under the laws of India. WhatFix Private Limited is headquartered in Bengaluru, Karnataka, India at No.1289/1090E, 18th Cross Road, Sector 3 HSR Layout Bangalore Karnataka 560102, India. WhatFix Inc., is a Delaware corporation. WhatFix Inc., is the US affiliate of WhatFix Private Limited. WhatFix's U.S. headquarters are located in San Jose, California at 2033 Gateway Place, Suite 120, San Jose CA 95110.

<u>JURISDICTION AND VENUE</u>

5.     The claims in this civil action arise under the patent laws of the United States, 35 U.S.C. § 1 et seq. This Court has subject matter jurisdiction over the patent claims pursuant to 28 U.S.C. §§ 1331 and 1338.

6.     This Court has personal jurisdiction over WhatFix pursuant to the laws of the State of Delaware and the United States Constitution because WhatFix is a Delaware corporation. WhatFix also regularly and continuously transacts business in this jurisdiction, including marketing and selling WhatFix Mirror throughout the State of Delaware. WhatFix has purposefully and voluntarily placed WhatFix Mirror into this District and into the stream of commerce with the intention and expectation that Mirror will be purchased and used by customers in this District.

7.     WhatFix has infringed or caused infringement in the State of Delaware by, among other things, promoting, offering for sale, and selling the infringing WhatFix Mirror in this District. Therefore, the exercise of jurisdiction over WhatFix is appropriate under the applicable jurisdictional statues and would not offend traditional notions of fair play and substantial justice.

8.    Venue is proper for claims of patent infringement in this District under 28 U.S.C. §§ 1391(b) & (c) and 1400(b) because WhatFix is incorporated in the State of Delaware and has committed, and continues to commit, acts of patent infringement within the District.

9.    WhatFix actively markets and sells WhatFix Mirror to customers across the United States, including in the District of Delaware.

10.    WhatFix intends to and does advertise, demonstrate, offer for sale, and sell the infringing products and services to customers in the District of Delaware. WhatFix intends for customers to use the infringing WhatFix Mirror within the District of Delaware.

## SUMMARY OF THE ACTION

### I.    Assima Recognized a Need in Training Employees to Use Complicated Software Systems.

11.    We live in a digital age. As technology grows more sophisticated, software systems become more complex. To compete, companies need powerful software systems to serve their business needs. However, some software systems affect employee performance because employees find the systems difficult to learn. The learning curve can be difficult and costly.

12.    Assima was founded in 1998 on the belief that systems training should be designed the way humans learn best: practicing, solving problems, making mistakes, and building confidence. Assima recognized that genuine immersion and practice is key to learning a new system.

13.    Assima invested significant resources in research and development. Assima's goal: to produce a software solution capable of allowing humans to practice in a hyper-realistic simulation environment, a clone of a system that looks and feels like the real system, but allows

humans to learn by doing, without the risks of live software usage, and master software systems necessary for their job performance.

14.     The result: Assima Train.

15.     Assima Train does not deliver systems training as static images. Rather, Assima Train produces a fully interactive clone of a system for employees to engage without the worry of making costly mistakes to the company's real data. Below is a screenshot from Assima's website demonstrating a live system vs. an Assima clone.



https://assimasolutions.com/platforms/systems-training/

16.     Partner One acquired Assima in 2019. At the time, Assima sold the world's only software solution that spanned the entire digital adoption life cycle: from initial training, to live assistance, to enterprise-wide collaboration. Assima maximizes user performance and minimizes errors for the world's largest corporations and governments.

## II.     Assima Patents Its Intellectual Property.

17.     After years of investment, risk, and innovation, Assima became the leader of systems training. To protect its intellectual property, Assima applied for, and received, several patents, including The Asserted Patents, covering its inventions.

18.     The '007 Patent, entitled *System and method for software prototype-development and validation and for automatic software simulation re-grabbing*, was duly and lawfully issued on December 27, 2011. The '007 Patent is assigned to Partner One. A true and correct copy of the '007 Patent is attached hereto as Exhibit 1.

19.     The '948 Patent, entitled *System and method for interface display screen manipulation*, was duly and lawfully issued on March 15, 2016. The '948 Patent is assigned to Partner One. A true and correct copy of the '948 Patent is attached hereto as Exhibit 2.

20.     Since at least January 2012, Assima has given the public, including WhatFix, notice of its patented technology through public announcements and press releases.

21.     Plaintiff Partner One is the current owner of all rights, title, and interest in The Asserted Patents. Partner One and Assima entered into an Intercompany Intellectual Property License Agreement ("The Agreement"), effective on June 23, 2022. In The Agreement, Partner One granted Assima an exclusive license to use The Asserted Patents in the United States.

22.     Assima Train practices The Asserted Patents because, among other things, Assima Train practices at least claim one of each of the Asserted Patents.

23.     Partner One, through Assima, sells Assima Train to companies around the world, including in the United States.

24.     WhatFix has specifically known about The Asserted Patents since at least October 31, 2024.

### III.    The Asserted Patents Recite Inventive Concepts That Were Not Well-Understood, Routine, Or Conventional, At The Time.

25.    As described herein, Assima Train is a revolutionary, category-creating product that: (1) solved significant problems in the prior art; (2) experienced immense market success; (3) received near-universal market praise; and (4) overcame significant technological hurdles in development. It is thus clear that Assima Train implemented inventive concepts that were not well-understood, routine, or conventional at the time it was developed. These inventive concepts are incorporated into the claims of The Asserted Patents. And it is the inventive concepts contained in the claims of The Asserted Patents that account for the leaps-and-bounds improvement achieved by Assima Train over the prior art, as well as Partner One/Assima's resulting economic success.

26.    The Asserted Patents describe and claim concepts that were not well-understood, routine, or conventional at the time of The Asserted Patents.

27.    For example, Claim 1 of the '007 Patent describes:

1. A computer application development method, comprising:

during, and based on, a first execution of a program, the first execution of the program including interaction with graphical user interface objects:

automatically identifying, by a processor, at least one object class instantiation according to which a respective one of the graphical user interface objects is displayed and that is associated by the program with a program state obtained during the first execution of the program; and

automatically storing, by the processor, in a first file a description of the identified at least one object class instantiation, wherein at least a portion of the first execution of the program is **simulatable without execution of the program** and based on the first file to display a sequence of graphical user interface screens in which the at least one respective graphical user interface object is displayed; and

**modifying the first file in response to a user interaction with a displayed one of the at least one respective graphical user interface object, wherein**

**a modified version of the at least the portion of the first execution of the program is simulatable based on the modified first file.**

28.     This alone represents an unconventional improvement over the prior art because prior art system training did not include program simulations that users could interact with and modify. Exhibit 1, 2:4–19. This offering was a major advancement over, at least, static image training in existence at that time. Further, the specification of the '007 Patent details this advancement. *See, e.g.*, Exhibit 1, 10:1–11:34; 21:31–22:24.

29.     Independent claims 21–23, and 27 the '007 Patent also recite unconventional technological advancements over the prior art that are similar to the unconventional technological advancements recited in independent claim one.

30.     As another example, Claim 1 of the '948 Patent describes:

1. A computer-implemented method, comprising:

> responsive to a first application triggering event during execution of a computer program, the first application triggering event triggering a display of a first user interface display screen:

>> obtaining, by a computer processor, a first instantiation data structure including a pointer to a first screen template that is stored in a data storage accessible by the processor and that identifies a first plurality of user interface graphical objects;

>> processing, by the processor, the first instantiation data structure, the processing of the first instantiation data structure including obtaining and instantiating the first screen template pointed to by the first instantiation data structure; and

>> outputting, by the processor and in a display device, the instantiated first screen template; and

> responsive to a second application triggering event during execution of the computer program, the second application triggering event triggering a display of a second user interface display screen:

>> **obtaining, by the processor, a second instantiation data structure including a pointer to a second screen template that is stored in the**

**data storage, points to the first screen template**, and identifies or references a second plurality of user interface graphical objects;

**processing, by the processor, the second instantiation data structure, the processing of the second instantiation data structure including obtaining and instantiating the second screen template pointed to by the second instantiation data structure, wherein the instantiation of the second screen template includes instantiating the first screen template**; and

outputting, by the processor and in the display device, the instantiated second screen template.

31.    This alone represents an unconventional improvement over the prior art because prior art application development or modification did not include program display simulations wherein the separate user interfaces are connected as if the user were executing the actual software program rather than a simulation. Exhibit 2, 1:13–2:46. This offering was a major advancement over, at least, simulations that did not mimic screen-to-screen movement as in actual software programs. Further, the specification of the '948 Patent details this advancement. *See, e.g.*, Exhibit 2, 8:41–9:43; 10:13–54; 15:3–14.

32.    Far from an abstract idea, The Asserted Patents are directed to a system with observable real-world impact. Indeed, The Asserted Patents claim software that carry forward the inventive concepts leading to improved systems training.

**IV.    WhatFix's Mirror Product Infringes The Asserted Patents.**

33.    Because of Assima's success, competitors have brought copycat products to market that infringe on Assima's intellectual property.

34.    According to a press release, WhatFix launched a new product called Mirror on February 14, 2024. "Mirror creates hyper-realistic and interactive replicas of web applications for immersive training and product demonstrations without any of the risks of live system engagement." https://www.prnewswire.com/news-releases/whatfix-launches-new-product-line-

mirror-marking-solid-growth-in-2023-302059842.html. Below is a screenshot from WhatFix's website showing a live application vs. a WhatFix Mirror instance.



https://whatfix.com/products/mirror/

35.     With at least the launch of Mirror, WhatFix now infringes The Asserted Patents. Furthermore, WhatFix induces its end users to infringe the Asserted Patents and contributes to its end users' infringement of the Asserted Patents

### i.     WhatFix and its end users infringe the '007 Patent.

36.     For example, WhatFix Mirror contains a computer application development method as claimed in the '007 Patent, claim 1. Below is a screenshot from WhatFix's website demonstrating this limitation.

With Whatfix Mirror, create interactive replicas of web applications for virtual hands-on user training without the risks of live software usage.

https://whatfix.com/products/mirror/

37.    Further, the method comprises "during, and based on, a first execution of a program, the first execution of the program including interaction with graphical user interface objects."

38.    For example, the screenshots below from a WhatFix Mirror demonstration show that while using Salesforce (first execution of a program), WhatFix Mirror has access to Salesforce.



39.    The screenshot below from WhatFix Mirror demonstration show that the use of Salesforce includes interaction with graphical user interface objects.



40.    Further, the method comprises "automatically identifying, by a processor, at least one object class instantiation according to which a respective one of the graphical user interface

objects is displayed and that is associated by the program with a program state obtained during the first execution of the program."

41.    The screenshots below from a WhatFix Mirror demonstration show that while on the home page of Salesforce, a user may choose to activate WhatFix Mirror.





42.    The screenshots below from a WhatFix Mirror demonstration show that upon clicking "leads" on the home page of Salesforce, Mirror automatically captures the home page of Salesforce. In addition, Mirror highlights the "leads" graphical user interface object in the capture and associates it with the home page capture.







43.     The screenshots below from a WhatFix Mirror demonstration show that upon previewing the captured instantiation of the home page, the "leads" graphical user interface object is associated with the instantiation of the home page.





44. Further, the method comprises "automatically storing, by the processor, in a first file a description of the identified at least one object class instantiation, wherein at least a portion of the first execution of the program is simulatable without execution of the program and based

on the first file to display a sequence of graphical user interface screens in which the at least one respective graphical user interface object is displayed."

45.     The screenshots below from a WhatFix Mirror demonstration show that WhatFix Mirror automatically stores, in a file, a description of the identified "home" Salesforce page after capturing the instantiation of the "home" Salesforce page.



46.     The screenshots below from a WhatFix Mirror demonstration show that WhatFix Mirror allows a user to simulate the captured instantiation of the "home" page of Salesforce without running the actual Salesforce program. The user can interact with the "leads" button (taking the user to the leads page).





47.     Further, the method comprises "modifying the first file in response to a user interaction with a displayed one of the at least one respective graphical user interface object, wherein a modified version of the at least the portion of the first execution of the program is simulatable based on the modified first file."

48.    For example, the screenshots below from a WhatFix Mirror demonstration show the file including the "home" page capture from sales force demonstrated above also included other screen captures including a "new lead" capture.





49.    The screenshots below from a WhatFix Mirror demonstration shows that while using WhatFix Mirror, a user can modify the content of a captured instantiation. For example, the "lead owner" of a "new lead."









50.     The screenshot above from a WhatFix Mirror demonstration shows that the simulation of the "new lead" page of Salesforce in WhatFix Mirror will then reflect the edited data in the "Lead Information" interface.

51.     In addition to WhatFix's own direct infringement of at least claim 1, there is direct infringement of at least claim 1 of the '007 patent by end users of the WhatFix Mirror.

52.     For example, WhatFix provides demonstrations of the WhatFix Mirror and how to operate it for potential end-users as shown above.

53.     Given WhatFix's sales of the WhatFix Mirror, it can be inferred there are many end users who have directly infringed at least claim 1 of the '007 Patent.

54.     WhatFix has, under 35 U.S.C. § 271(b), induced infringement and continues to induce infringement of the '007 Patent.

55.     WhatFix has recommended, encouraged, and promoted the infringing use of the WhatFix Mirror in the United States.

56.     On information and belief, WhatFix acted with intent to encourage others to directly infringe the '007 Patent by encouraging the use of the WhatFix Mirror in an infringing manner.

57.     Partner One gave WhatFix notice of infringement of the '007 Patent in October 2024 via a letter, a copy of which is attached as Exhibit 3.

58.     Despite knowing of the '007 Patent, WhatFix has sold and continues to sell and offer for sale the WhatFix Mirror.

59.     WhatFix's website includes video instructions and a prompt to request a demonstration of the WhatFix Mirror. A screenshot of the website is shown below.



https://whatfix.com/products/mirror/

60. WhatFix's distribution of instruction videos and demonstrations constitutes active inducement under § 271(b).

61. WhatFix's website includes a support page for WhatFix Mirror, a screenshot of which is provided below.



https://support.whatfix.com/mirror/docs/create-whatfix-mirror-1

62. The support page instructs users how to use the WhatFix Mirror, which induces infringement of at least claim 1 of the '007 Patent.

63.     Under information and belief, WhatFix directs its customers to this website, constituting active inducement under § 271(b).

64.     WhatFix's conduct is done with knowledge of the '007 Patent, and, on information and belief, WhatFix has engaged in such activities knowing its customers would infringe the '007 Patent.

65.     On information and belief, WhatFix has, under 35 U.S.C. § 271(c), engaged in contributory infringement, and continues to contribute to infringement of the '007 Patent.

66.     The WhatFix Mirror is not a staple article or commodity of commerce.

67.     The WhatFix Mirror has no substantial non-infringing use.

68.     WhatFix does not advertise the WhatFix Mirror in a way other than its infringing use.

69.     WhatFix offers to sell and sells the WhatFix Mirror within the United States.

70.     The WhatFix Mirror is a software product for the use in practicing at least claim 1 of the '007 Patent.

71.     WhatFix encourages users to perform infringing acts, by instructing users how to use the WhatFix Mirror.

72.     While having knowledge of the '007 Patent, WhatFix has encouraged users to perform infringing acts.

73.     WhatFix knows the WhatFix Mirror is especially made for use in infringement of at least claim 1 of the '007 Patent.

74.     WhatFix knew or should have known that its actions constitute infringement of the '007 Patent, and has had such knowledge since at least October 31, 2024.

75.     As a result, WhatFix's infringement of the '007 Patent has been, and continues to be, willful.

**ii.     WhatFix and its end users infringe the '948 Patent.**

76.     As a further example, WhatFix Mirror contains a computer-implemented method as claimed in the '948 Patent, claim 1. Below is a screenshot from WhatFix's website demonstrating this limitation.

With Whatfix Mirror, create interactive replicas of web applications for virtual hands-on user training without the risks of live software usage.

https://whatfix.com/products/mirror/

77.     The method comprises "responsive to a first application triggering event during execution of a computer program, the first application triggering event triggering a display of a first user interface display screen: obtaining, by a computer processor, a first instantiation data structure including a pointer to a first screen template that is stored in a data storage accessible by the processor and that identifies a first plurality of user interface graphical objects;"

78.     For example, screenshots below from a WhatFix Mirror demonstration show that while using Salesforce (during execution of a computer program), WhatFix Mirror has access to Salesforce.





79.     Screenshots below from a WhatFix Mirror demonstration show that while on the home page of Salesforce, a user may choose to activate WhatFix Mirror (triggering event).







80.    Screenshots below from a WhatFix Mirror demonstration show that upon clicking "leads" on the home page of Salesforce, the home page of Salesforce is captured, stored, and the "leads" graphical user interface object is on display of the captured home page and associated with the home page capture.









81.    The method further comprises "processing, by the processor, the first instantiation data structure, the processing of the first instantiation data structure including obtaining and instantiating the first screen template pointed to by the first instantiation data structure; and outputting, by the processor and in a display device, the instantiated first screen template."

82.    For example, screenshots below from a WhatFix Mirror demonstration show that Mirror obtains and stores, in a file, a description of the identified "home" Salesforce page after capturing the instantiation of the "home" Salesforce page.



83.    Screenshots below from a WhatFix Mirror demonstration show that Mirror allows a user to simulate the captured instantiation of the "home" page of Salesforce without running

the actual Salesforce program. The user can interact with the "leads" button (taking the user to the leads page).



84.     The method further comprises "responsive to a second application triggering event during execution of the computer program, the second application triggering event triggering a display of a second user interface display screen: obtaining, by the processor, a second instantiation data structure including a pointer to a second screen template that is stored in the data storage, points to the first screen template, and identifies or references a second plurality of user interface graphical objects;"

85.    For example, screenshots below from a WhatFix Mirror demonstration show the file including the "home" page capture from sales force demonstrated above also included other screen captures including a "new lead" capture.





86.    Screenshots below from a WhatFix Mirror demonstration show that when the user

previews the captured pages, such as the "home" page capture, an instantiation of the "home"

page is generated without using the actual Salesforce application. The user can then navigate to

the second capture, the "leads" page in the instantiation as shown from the demo video below.



87.     Further, screenshots below from a WhatFix Mirror demonstration show that upon clicking "leads" on the home page of Salesforce, the home page of Salesforce is captured, stored, and the "leads" graphical user interface is on display of the capture and associated with the home page capture. Upon clicking, "new" on the "leads" page of Salesforce, the "leads" page of Salesforce is captured, stored, and the "new" graphical user interface is on display of the capture and associated with the "leads" page capture.











88.    The method further comprises "processing, by the processor, the second instantiation data structure, the processing of the second instantiation data structure including obtaining and instantiating the second screen template pointed to by the second instantiation data structure, wherein the instantiation of the second screen template includes instantiating the first

screen template; and outputting, by the processor and in the display device, the instantiated second screen template."

89.    Screenshots below from a WhatFix Mirror demonstration shows that Mirror obtains and stores, in a file, a description of the identified "home" and "leads" Salesforce pages after capturing the instantiation of the "home" and "leads" Salesforce pages.





90.    Screenshots below from a WhatFix Mirror demonstration show that Mirror allows a user to simulate the captured instantiation of the "home" page and the "leads" page of Salesforce without running the actual Salesforce program. The user can interact with the "leads" button (taking the user to the leads page). The user can then interact with the "new" button (taking the user to the "new lead" pop up page).









91.     In addition to WhatFix's own direct infringement of at least claim 1, there is direct infringement of at least claim 1 of the '948 patent by end users of the WhatFix Mirror.

92.     For example, WhatFix provides demonstrations of the WhatFix Mirror and how to operate it for potential end-users as shown above.

93.     Given WhatFix's sales of the WhatFix Mirror, it can be inferred there are many end users who have directly infringed at least claim 1 of the '948 Patent.

94.     WhatFix has, under 35 U.S.C. § 271(b), induced infringement and continues to induce infringement of the '948 Patent.

95.     WhatFix has recommended, encouraged, and promoted the infringing use of the WhatFix Mirror in the United States.

96.    On information and belief, WhatFix acted with intent to encourage others to directly infringe the '948 Patent by encouraging the use of the WhatFix Mirror in an infringing manner.

97.    Partner One gave WhatFix notice of infringement of the '948 Patent in October 2024 via a letter, a copy of which is attached as Exhibit 3.

98.    Despite knowing of the '948 Patent, WhatFix has sold and continues to sell and offer for sale the WhatFix Mirror.

99.    WhatFix's website includes video instructions and a prompt to request a demonstration of the WhatFix Mirror. A screenshot of the website is shown below.



With Whatfix Mirror, create interactive replicas of web applications for virtual hands-on user training without the risks of live software usage.

https://whatfix.com/products/mirror/

100.    WhatFix's distribution of instruction videos and demonstrations constitutes active inducement under § 271(b).

101.    WhatFix's website includes a support page for WhatFix Mirror, a screenshot of which is provided below.



https://support.whatfix.com/mirror/docs/create-whatfix-mirror-1

102.    The support page instructs users how to use the WhatFix Mirror, which induces infringement of at least claim 1 of the '948 Patent.

103.    Under information and belief, WhatFix directs its customers to this website, constituting active inducement under § 271(b).

104.    WhatFix's conduct is done with knowledge of the '948 Patent, and, on information and belief, WhatFix has engaged in such activities knowing its customers would infringe the '948 Patent.

105.    On information and belief, WhatFix has, under 35 U.S.C. § 271(c), engaged in contributory infringement, and continues to contribute to infringement of the '948 Patent.

106.    The WhatFix Mirror is not a staple article or commodity of commerce.

107.    The WhatFix Mirror has no substantial non-infringing use.

108.    WhatFix does not advertise the WhatFix Mirror in a way other than its infringing use.

109.    WhatFix offers to sell and sells the WhatFix Mirror within the United States.

110.    The WhatFix Mirror is a software product for the use in practicing at least claim 1 of the '948 Patent.

111.    WhatFix encourages users to perform infringing acts, by instructing users how to use the WhatFix Mirror.

112.    While having knowledge of the '948 Patent, WhatFix has encouraged users to perform infringing acts.

113.    WhatFix knows the WhatFix Mirror is especially made for use in infringement of at least claim 1 of the '948 Patent.

114.    WhatFix knew or should have known that its actions constitute infringement of the '948 Patent, and has had such knowledge since at least October 31, 2024.

115.    As a result, WhatFix's infringement of the '948 Patent has been, and continues to be, willful.

### iii.    WhatFix's infringement is willful.

116.    WhatFix's decision to copy Assima's interactive technology is no accident. WhatFix competes directly with Assima in the systems training space, although historically with a different product suite. For example, WhatFix's Digital Adoption Platform provides "contextual in-app guidance" to enable users to learn how to use an application within an actual application rather than a simulation. https://whatfix.com/products/digital-adoption-platform/. However, WhatFix recently decided to copy patent-protected Assima's Train product based on the product details disclosed on Assima's website. Further, WhatFix not only copied Assima's product but clearly incorporated Assima's wording and messaging in its own marketing. For example, A screenshot below of WhatFix Mirror marketing includes a side-by-side comparison of a live application against a Mirror instance just as Assima provides a side-by-side comparison of a live system against an Assima Clone in Assima's marketing.



https://whatfix.com/products/mirror/



https://assimasolutions.com/platforms/systems-training/

117. WhatFix's goal was to copy Assima's product, presentations, and marketing.

After copying Assima's product and marketing, WhatFix rolled out the Mirror product,

However, "new" WhatFix may claim the Mirror product to be, its interactive technology is claimed in The Asserted Patents and practiced in Assima Train.

118.    WhatFix's infringement of Assima's patented technology has been intentional and knowing.

119.    For example, a screenshot below of WhatFix's website shows that WhatFix has a dedicated portion of its website just for describing why WhatFix considers WhatFix better than Assima (including Assima Train), which is filled with falsehoods and misrepresentations regarding Assima's product.



https://whatfix.com/assima-alternatives-competitors/

120.    A screenshot below of WhatFix's website shows WhatFix specifically identifies Assima Train.

46

## What Is Assima Training?

Assima Solutions offers a suite of tools designed to help teams train and onboard users in a hyperrealistic sandbox, empower them with the in-app tools they need to resolve issues on-demand, serve up relevant, step-by-step guides based on a user's role and context, enrich the training experience, etc.

Assima offers three products:

- Assima Train enables IT teams to create replica sandbox environments of enterprise software, providing an interactive interface for testing end-user workflows and providing hands-on training to end-users.

https://whatfix.com/assima-alternatives-competitors/

121.    A screenshot below from WhatFix's website shows that WhatFix compares itself to Assima.

## Why Whatfix Is the Best Assima Alternative

Whatfix is a Digital Adoption Platform (DAP) and sandbox application creation tool built for large-scale enterprise applications, regardless of vender, application type, or industry. With Whatfix, organizations can drive adoption, maximize technology investments, and optimize tasks and workflows to drive business outcomes. With Whatfix, it's simple to create replicate application environments to provide hands-on training and user testing across any application type, without needing engineering support.

https://whatfix.com/assima-alternatives-competitors/

122.    WhatFix actively markets and sells WhatFix Mirror to customers across the United States, including in the District of Delaware.

123.    WhatFix Mirror is available for demonstration, and eventually, purchase, including via WhatFix's website, as shown in the screenshot below.

47



https://whatfix.com/products/mirror/

124.    WhatFix Mirror satisfies each and every limitation of one or more claims of The Asserted Patents.

## COUNT I

**(Infringement of U.S. Patent No. 8,087,007, 35 U.S.C. § 271 *et seq.*)**

125.    Plaintiffs incorporate all other allegations in this Complaint and Exhibits 1 and 2, attached hereto.

126.    Partner One is the owner of all rights, title, and interest in the '007 Patent. The '007 Patent issued on December 27, 2011.

127.    The '007 Patent is valid and enforceable.

128.    In violation of 35 U.S.C. § 271(a), WhatFix makes, uses, offers to sell, and sells the WhatFix Mirror. WhatFix and the WhatFix Mirror satisfy each and every limitation of one or more claims of the '007 Patent. WhatFix thereby directly infringes at least claim 1 of the '007 Patent. *See e.g., supra*, Paragraphs 36-50

129.    In violation of 35 U.S.C. § 271(b), WhatFix induced infringement and continues to induce infringement of the '007 Patent. *See e.g., supra*, Paragraphs 51–64

130.    In violation of 35 U.S.C. § 271(c), WhatFix engaged in contributory infringement, and continues to contribute to infringement of the '007 Patent. *See e.g., supra*, Paragraphs 65–75

131.    WhatFix's ongoing infringement is willful at least as of the filing of this Complaint. At least due to WhatFix's willful infringement, the conduct of WhatFix presents an exceptional case such that Plaintiffs are entitled to an award of treble damages and its reasonable attorneys' fees, as provided by 35 U.S.C. § 284 and § 285.

132.    Plaintiffs have suffered, and continue to suffer, damages and irreparable harm because of WhatFix's ongoing infringement.

133.    Unless WhatFix's infringement is enjoined, Plaintiffs will continue to be damaged and irreparably harmed.

134.    Plaintiffs meet the criteria for, and are entitled to, temporary, preliminary, and permanent injunctive relief.

## COUNT II

**(Infringement of U.S. Patent No. 9,285,948, 35 U.S.C. § 271 *et seq.*)**

135.    Plaintiffs incorporate all other allegations in this Complaint and Exhibits 1 and 2, attached hereto.

136.    Partner One is the owner of all rights, title, and interest in the '948 Patent. The '948 Patent issued on March 15, 2016.

137.    The '948 Patent is valid and enforceable.

138.    In violation of 35 U.S.C. § 271(a), WhatFix makes, uses, offers to sell, and sells the WhatFix Mirror. WhatFix and the WhatFix Mirror satisfy each and every limitation of one or more claims of the '948 Patent. WhatFix thereby directly infringes at least claim 1 of the '948 Patent. *See e.g., supra*, Paragraphs 76–90

139.    In violation of 35 U.S.C. § 271(b), WhatFix induced infringement and continues to induce infringement of the '948 Patent. *See e.g., supra*, Paragraphs 91–104

140.    In violation of 35 U.S.C. § 271(c), WhatFix engaged in contributory infringement, and continues to contribute to infringement of the '948 Patent. *See e.g., supra*, Paragraphs 105–115

141.    WhatFix's ongoing infringement is willful at least as of the filing of this Complaint. At least due to WhatFix's willful infringement, the conduct of WhatFix presents an exceptional case such that Plaintiffs are entitled to an award of treble damages and its reasonable attorneys' fees, as provided by 35 U.S.C. § 284 and § 285.

142.    Plaintiffs have suffered, and continue to suffer, damages and irreparable harm because of WhatFix's ongoing infringement.

143.    Unless WhatFix's infringement is enjoined, Plaintiffs will continue to be damaged and irreparably harmed.

144.    Plaintiffs meet the criteria for, and are entitled to, temporary, preliminary, and permanent injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully asks that the Court enter judgment against Defendant WhatFix as follows:

145.    That Defendant WhatFix has infringed (either literally or under the doctrine of equivalents) directly, jointly, and/or indirectly by way of practicing, inducing, or contributing to the infringement of one or more claims of The Asserted Patents;

146.    That WhatFix's ongoing infringement of The Asserted Patents was willful;

147.    For temporary, preliminary, and permanent injunctive relief enjoining Defendant WhatFix and its officers, directors, agents, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert or participation with it, from infringing, inducing the infringement, or contributing to the infringement of The Asserted Patents;

148.    For an award to Plaintiffs for their damages, costs, expenses, and prejudgment and post-judgment interest for WhatFix's infringement of The Asserted Patents;

149.    For an award to Plaintiffs for enhanced damages equal to treble the amount of actual damages, for the willful nature of WhatFix's acts of infringement as to The Asserted Patents after the date of this complaint, as provided under 35 U.S.C. § 284 and § 154;

150.    For a declaration finding this case exceptional under 35 U.S.C. § 285;

151.    Reasonable attorneys' fees and costs against WhatFix; and

152.    For any and all other relief to which Plaintiffs may show themselves to be entitled.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Dated: February 20, 2025

*Of Counsel:*

Kevin J. Malaney
Kimberly K. Dodd
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
KMalaney@foley.com
KDodd@foley.com

Stewart R. Nelson
95 S State Street, Suite 2500
Salt Lake City, UT 84111
srnelson@foley.com

   */s/ Kenneth L. Dorsney*
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6839
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Plaintiffs*
*Partner One Acquisitions Inc and*
*Assima USA LLC*