**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **PARTNER ONE ACQUISITIONS INC., ASSIMA USA LLC** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-209** |
| | : | |
| **WHATFIX PRIVATE LIMITED, WHATFIX, INC.** | : | |

**<u>MEMORANDUM</u>**

**MURPHY, J.** **NOVEMBER 24, 2026**

This patent infringement case involves two patents on a software development system. The case is in discovery. Before the deadline to amend the pleadings, Whatfix moved for leave to amend its answer to add an affirmative defense of unenforceability due to inequitable conduct by the inventor and two prosecuting attorneys. The plaintiffs oppose, arguing that the allegations fall below the heightened pleading standard for inequitable conduct. We grant Whatfix's motion as it relates to the inventor but deny it with respect to the prosecuting attorneys.

## I. FACTUAL BACKGROUND

In February 2025, Partner One Acquisitions Inc. and Assima USA LLC (collectively Assima) sued Whatfix Private Limited and Whatfix, Inc. (collectively Whatfix) alleging infringement of two U.S. patents: Nos. 8,087,007 and 9,285,948. *See* DI 1 ¶ 2. Partner One came to own the patents through its 2019 acquisition of Assima USA LLC. *Id.* ¶¶ 16-19. These patents pertain to "Assima Train" — a product Assima developed that "produces a fully interactive clone of a [software] system" which allows users, such as employees or programmers, to engage with and modify the system's clone without affecting the actual software program. *Id.* ¶¶ 15, 28, 31. Assima alleges Whatfix willfully infringes the 007 patent and the 948 patent through its product Mirror. *Id.* ¶¶ 34-124.

On May 8, 2006, attorney Gerard Messina filed for the 007 patent on behalf of inventor Eric Duneau and Assima in U.S. patent application no. 11/430,482. DI 61-1, Aff. Def's ¶ 16. Attorney Aaron Grunberger also filed documents with the Patent Office on behalf of Mr. Duneau and Assima. *Id.* The 007 patent issued on December 27, 2011. *Id.* The 007 patent describes a system and method for developing and familiarizing users with a software product through the creation of a modifiable simulation of the software that (1) makes software coding a more efficient and less error-prone process; and (2) enables more effective user training of that software. *See, e.g.,* 007 patent at 1:28-2:19. On March 15, 2013, Mr. Grunberger filed for the 948 patent, also on behalf of Mr. Duneau and Assima, in U.S. patent application no. 13/834,459. DI 61-1, Aff. Def's ¶ 17. The 948 patent issued on March 16, 2016. *Id.* The 948 patent describes a system and method for software (1) prototyping; (2) tutorial development; and/or (3) reproduction and/or development of electronic performance support system (EPSS) objects. *See, e.g.,* 948 patent at 1:6-9.

Both the Assima Train and at least one of Assima's other software products (the Assima Wizard) are said to predate the 007 and 948 patents. DI 61-1, Aff. Def's ¶ 15. Mr. Duneau was an employee of Assima at least as of 2002. *Id.* ¶ 20. Relevant here, Mr. Duneau submitted a comment on an online review of Assima's software on September 7, 2007. *Id.* In this comment, Mr. Duneau referred to himself as Assima's CTO and described a third-party product, the Knowledge Impact Firefly. *Id.* During the prosecution of the 007 patent and the 948 patent, neither Assima's prior art products nor the Knowledge Impact Firefly were disclosed to the Patent Office. *Id.*

## II. MOTION AT ISSUE

The case is in discovery, and Whatfix now moves for leave to amend its answer to add an affirmative defense of unenforceability due to inequitable conduct. DI 61 at 2, 20-26.[1] Whatfix timely filed this motion for leave to amend before the deadline for amendment to the pleadings and included a proposed amended answer. *See* DI 46; DI 60; DI 61-1. Whatfix alleges that during discovery it identified software products that were available before the priority date of the 007 and 948 patents. DI 61 at 5-6. Whatfix further alleges that both the inventor and the prosecuting attorneys knew of these prior art software products, failed to disclose them to the Patent Office, and, but for this lack of disclosure, the Patent Office would not have granted the patents. *Id.*

Assima opposes Whatfix's motion to amend on the grounds that the proposed inequitable conduct defense is futile because Whatfix cannot identify "where a specific individual both knew of invalidating information that was withheld from the [Patent Office] and withheld that information with the specific intent to deceive the [Patent Office]." DI 64 at 8. Assima does not contest that the inventor knew of the prior art products and, instead, maintains that Whatfix did not show that the prosecuting attorneys knew of the prior art products, and further did not demonstrate an intent to deceive by either the inventor or the prosecuting attorneys. *Id.* at 8-14. Accordingly, Assima asks us to deny Whatfix's motion. *Id.* at 14.

## III. LEGAL STANDARDS

Though the decision to grant or deny a party leave to amend is within our discretion, *Foman v. Davis*, 371 U.S. 178, 182 (1962), we should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *United States ex rel. Schumann v. AstraZeneca Pharms.*

[1] We use the sequential pagination of the CM/ECF docketing system.

*L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). Indeed, the Third Circuit recognizes a "policy favoring liberal amendment" under Rule 15(a). *Dole v. Arco Chemical Co.*, 921 F.2d 484, 488 (3d Cir. 1990). But we may deny such leave when it is clear from the record that "(1) the moving party demonstrated undue delay, bad faith, or dilatory motives; (2) amendment would be futile; or (3) amendment would prejudice the" nonmovant. *Schumann*, 769 F.3d at 849 (citation omitted). In assessing a proposed amendment's futility, we utilize Rule 12(b)(6)'s legal sufficiency standard. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Under this standard, dismissal is proper if, after accepting the well-pleaded allegations in the amended answer as true and viewing them in the light most favorable to the complainant, the allegations "could not raise an entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

Inequitable conduct must be pled to meet the heightened standards of Rule 9(b). *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003). Rule 9(b) requires allegations of fraud, such as inequitable conduct, or mistake to be pled with sufficient particularity. Fed. R. Civ. P. 9(b). Specifically, "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the [Patent Office]." *Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1328 (Fed. Cir. 2009). Additionally, while "knowledge" and "intent" may be averred generally, the pleading must still have sufficient factual allegations such that we may "reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the [Patent Office]." *Id.* at 1328-29.

## IV. DISCUSSION

Assima opposes Whatfix's motion for leave to amend on the ground that it is futile because Whatfix does not identify a specific individual that both knew of the invalidating information and withheld that invalidating information from the Patent Office with specific intent to deceive the Patent Office. DI 64 at 8. We agree for the prosecuting attorneys. But for the inventor, Mr. Duneau, we disagree because Whatfix sufficiently stated allegations for both knowledge and intent. We therefore grant the motion for leave to amend and allow Whatfix to pursue the defense with respect to Mr. Duneau's conduct.

### A. Whatfix adequately alleges that the inventor had knowledge of the supposedly withheld prior art.

Starting with knowledge, Whatfix alleges that Mr. Duneau knew about Assima's own prior art products, Assima Train and Assima Wizard, because he was an employee — the CTO even — of Assima. DI 61-1, Aff. Def's ¶¶ 15, 20. And as for the third-party product, the Knowledge Impact Firefly, Whatfix points to Mr. Duneau's comment on an online review that discussed the Knowledge Impact Firefly in relation to Assima's software. *Id.* ¶ 20. At this stage, Assima does not dispute that Mr. Duneau had knowledge of these alleged prior art products. *See* DI 64 at 9-10. Accordingly, we move on to intent to deceive.

### B. Whatfix adequately alleges that the inventor had intent to deceive the Patent Office by withholding the prior art.

Turning to intent, Whatfix alleges that Mr. Duneau withheld the software product prior art references during the prosecution of the two patents with the intent to deceive the Patent Office. DI 61-1, Aff. Def's ¶ 25. Whatfix contends that intent may be fairly inferred from Mr. Duneau's in-depth understanding of the products: "Based on [Mr. Duneau's] intimate awareness of the Assima [software products] operation (owing to the products being Assima's own) as well as [his] awareness of the Firefly system's operation (as evidenced, for example, by [his] public

comments), [Mr. Duneau] knew or should have known the [Patent Office] would have considered the information material to its decision to grant the" patents. *Id.* at ¶ 20; *see also* DI 61 at 10 (citing *Persawvere, Inc. v. Milwaukee Electric Tool Corporation*, 2023 WL 3750812 (D. Del. June 1, 2023) and *Targus Int'l LLC v. Victorinox Swiss Army, Inc.*, 2021 WL 2291978 (D. Del. June 4, 2021)).

Assima disagrees, contending that "Whatfix's argument hinges entirely on the allegation that the Assima Products were material and that Mr. Duneau knew about them." DI 64 at 8. For the Knowledge Impact Firefly, Assima maintains that if "Mr. Duneau knew that Firefly was material but failed to disclose the information despite his ongoing duty to disclose, it does not follow that Mr. Duneau would make his knowledge of Firefly known to the public when he otherwise did not want the [Patent Office] to know." *Id.*

Whatfix sufficiently stated its inequitable conduct defense for Mr. Duneau. Intent to deceive does not necessarily follow from knowledge, even at the pleadings stage. But a reasonable inference is enough here. *See Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011); *Persawvere*, 2023 WL 3750812, at *5 ("An inequitable conduct claim 'is rarely disallowed at the pleading stage due to failure to adequately allege scienter.'" (quoting *Zadro Prods., Inc. v. SDI Techs., Inc.*, 2019 WL 1100470, at *5 (D. Del. Mar. 8, 2019))). Here, Mr. Duneau allegedly has intimate knowledge of the purported prior art, and given the alleged surrounding circumstances, that is sufficient to draw a fair inference that he knew it would be material and chose not to inform the Patent Office in spite of a duty to do so. Accordingly, we conclude that Whatfix has adequately alleged the inventor's intent to deceive the Patent Office and grant the motion to amend as it relates to Mr. Duneau.

**C. Whatfix does not state a defense of inequitable conduct for the prosecuting attorneys because the factual allegations do not allow a reasonable inference that the prosecuting attorneys had knowledge of the allegedly withheld prior art.**

Turning next to the prosecuting attorneys, Whatfix states that "[o]n information and belief, Messrs. Messina and Grunberger, the prosecuting attorneys for these patents, were also aware of the Knowledge Impact Firefly and Assima Prior Art Products and their relevance and materiality to those alleged inventions." DI 61-1, Aff. Def's ¶ 20. Assima argues that this allegation is insufficient because there were no allegations suggesting that the prosecuting attorneys had any independent reason to know of the prior art references. DI 64 at 5. Assima points out that Whatfix groups the prosecuting attorneys with the inventor to try and satisfy the knowledge requirement with respect to the prosecuting attorneys. *Id.* Accordingly, Assima likens this situation to that of *Int'l Bus. Machs. Corp. v. Priceline Grp. Inc.*, where the defendants' allegations of knowledge for the inventors and most of the prosecuting attorneys based "on information and belief" were insufficient to forestall dismissal of an inequitable conduct counterclaim. 2017 WL 1349175, at *9 (D. Del. Apr. 10, 2017), *report and recommendation adopted* 2017 WL 11549735 (D. Del. May 10, 2017).

We agree with Assima and conclude that Whatfix did not state a cognizable defense of inequitable conduct against the prosecuting attorneys because the amended answer includes no factual allegations allowing a fair inference that the attorneys knew about the allegedly withheld prior art. Although we agree with Whatfix that it is reasonable to assume that the attorneys worked with Mr. Duneau during prosecution, we disagree that it is reasonable to infer, without any other information, that Mr. Duneau would have told the attorneys about the prior art software products. It is improper to sweep in the attorneys using an approach of "guilt by association" with the inventor. Lacking knowledge, the prosecuting attorneys could not have

had intent to deceive. Accordingly, we deny Whatfix's motion for leave to amend for inequitable conduct with respect to the prosecuting attorneys.

## V. CONCLUSION

For the above reasons, Whatfix's motion for leave to amend its answer is granted as it relates to the inventor, Eric Duneau, and denied as it relates to the prosecuting attorneys.